# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ERICA GLASKER, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 17-00121-N |
| | ) |
| SMALL WONDERS | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Small Wonders' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 63). *Pro se* Plaintiff Erica Glasker has failed to respond to Defendant's motion.[1]

With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 12, 14). Upon consideration, the Court finds that Defendant Small Wonders' motion for summary judgment (Doc. 63) is due to be **GRANTED**.

## I. Procedural History

On March 17, 2017, *pro se* Plaintiff Erica Glasker ("Plaintiff") filed a Complaint alleging that her former employer, Defendant Small Wonders Learning Center

---

[1] When this case began, the Court sent copies of its orders to Plaintiff via regular and certified mail. On numerous occasions, the certified mail was returned to the Court as undeliverable. None of the communications sent via regular mail were returned to the Court. The Court ceased sending its communications via certified mail, and began using only regular mail. Further, during a status hearing, the undersigned questioned Plaintiff regarding receipt of the Court's communications and Plaintiff indicated that she was receiving mail from the Court. As a result, the Court is satisfied that Plaintiff was aware of Defendant's motions and her deadlines to respond.

1

("Defendant") discriminated against her on the basis of race, in violation of 42 U.S.C. § 2000e *et seq*. ("Title VII"), when it terminated her employment in retaliation for her bringing an Equal Employment Opportunity Commission ("EEOC") claim against the Defendant. (Doc. 1)

On June 12, 2017, Defendant answered the Complaint. (Doc. 13). On February 16, 2018, after the close of discovery, Defendant moved for summary judgment. (Doc. 63 and exhibits).[2] Plaintiff failed to respond to Defendant's motion for summary judgment and the deadline to do so has long passed.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

---

[2] Defendant has also filed a motion for sanctions (Doc. 62), alleging that Plaintiff failed to comply with her discovery obligations, which will be addressed by separate order.

> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

### III. Facts

At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings,

3

may not be the actual facts of the case." *Priester v. City of Riviera Beach,* 208 F.3d 919, 925 n. 3 (11th Cir. 2000). Here, Plaintiff has failed to respond to Defendant's motion for summary judgment so the only facts before the Court are those alleged in Plaintiff's Complaint and in Defendant's brief in support of its motion for summary judgment. (Docs. 1, 64-3).

Defendant operates two child care/preschool centers located in Grand Bay, Alabama and Bayou La Batre, Alabama. Plaintiff began working at Defendant's Grand Bay location in September 2014.

Two of the programs in the day care center are federally funded programs which are required to meet specific standards, namely (1) the Early Head Start Program ("EHS") for ages 6 weeks to 3 years; and (2) the OSR Program ("OSR") for ages 4 -5. The EHS program started in April of 2015 and Plaintiff was offered a position there. Employees within EHS are required to obtain a certificate (the "CDA") after undergoing online training and passing a test.

Payroll guidelines for the EHS Program and the OSR Program are mandated by the agencies which govern those particular grants and are monitored by those agencies. During "non-program" times (vacations, summer break, holidays, etc.), employees are paid by Small Wonders at a rate which Defendant claims "is applied in a racially neutral manner, taking into account matters such as seniority." (Doc. 63-4 at 2). According to Defendant, "[w]hile seniority dictates a slightly higher pay

scale for some employees, no discrimination exists between employees based on race." (*Id*. citing Doc. 63-2 Povilonis affidavit).[3]

After receiving her CDA June 23, 2016, Plaintiff was paid $9.62 an hour as mandated by the EHS during program days, which is the same rate of pay as four other employees, two white and two black, of the six EHS employees.[4] During non-program hours, one employee, Heather Blocker ("Blocker"), was paid at an increased rate of $8.00 per hour due to her many years of employment with Small Wonders. Another employee received $7.25 per hour because she was new to the program- when she was offered an EHA position she was then bumped up to $8.25 per hour. Other EHS employees including Plaintiff, received $7.50 per hour during non- program hours. (Doc. 63-2 Povilonis affidavit).

Specific rules of conduct apply to EHS employees (Ex. 4, BS103). Plaintiff acknowledges receiving the rules and signing them (p. 154, l. 10-12).[5] These rules provide in part: "Employees must cooperate with fellow employees and the public in order to set a high standard of work performance. Unwillingness or failure to cooperate shall be cause for disciplinary action."

Starting in July 2016 a number of incidents occurred which, from the perspective of the management of Small Wonders, resulted in the Plaintiff becoming increasingly insubordinate and difficult to work with. Part of the Small Wonders'

---

[3] Candy Povilonis and her husband "are principals of the ownership of Small Wonders." (Doc. 63-2 at 1).
[4] The other two employees were waiting on their log-in information from the main EHS office so they could begin the CDA process.
[5] All page and line references are to Plaintiff's deposition.

5

operation includes picking children up from public school and bringing them back to the center for the After-School Program. Plaintiff's two children were picked up by the day care van and brought back to Small Wonders where they were also enrolled in the after-school program.

On May 9, 2016 Plaintiff's son, age 5, was reported to have thrown rocks at the van driver Vickie Clampett's ("Clampett") head while the van was in transit. Plaintiff was counseled about the incident by management as it interfered with the safe operation of the van. (BS0102). Plaintiff appeared to take the incident report as a personal attack on her and her family. Plaintiff admits she was angry. (pp. 76-77, l. 16-23, 1-11; pp. 75-77, l. 15-23, 1-23, 1-22). Plaintiff believed the van driver had been verbally abusive to her older son and was also angered by that belief. (p. 76-77, l. 16-23, 1-11; pp. 83-85, l. 14-23, 1-23, 1-2). Plaintiff testified her children would come home at night traumatized and begging "please don't take me to the daycare." (p. 79, l. 7-16). Plaintiff wrote a note stating that she did not want Clampett to be the driver who transported her children to and from school (BS063) (p.110, l. 12-18).

Plaintiff appeared to adopt a negative opinion of Small Wonders, the EHS Program teachers, and van drivers. Plaintiff admits she had "run ins" and had gotten angry with Clampett. (pp. 85-86, l. 17-23, 1-5, 87-88, l. 21-23, 1-2). Management attempted to mollify the situation by assigning a different van driver, Jennifer Roberts ("Roberts"), to pick up Plaintiff's children. (p. 85-86, l. 17-23, 1-5).

According to Defendant, Plaintiff also had a "run-in" with an employee named Cassandra (last name unknown) and as a result, Plaintiff would never speak to Cassandra again. (pp. 89-90, l. 1-23, 1-5). Management was also advised that Plaintiff had made a number of disparaging remarks about the day care operation to other parents. (Doc. 63-2 Povilonis affidavit). On July 20, 2016, during the EHS end of year performance evaluation by Plaintiff's immediate supervisor, Amanda Muncey ("Muncey"), Plaintiff was notified of several areas of concern. Specifically, (1) Plaintiff viewed all constructive critiques as personal attacks, (2) lack of communication with teaching staff and supervisor, (3) positive attitude toward EHS but negative attitude toward Small Wonders, (4) on-going conflicts with fellow EHS teacher, Jessica Holley ("Holley"). (Doc. 63-1 Muncey Affidavit). Plaintiff admits taking offense to her supervisor's comments (pp. 91-92, l. 15-23, 1). Following the performance evaluation, Plaintiff began to act in an uncooperative fashion toward supervisor Muncey. Plaintiff felt Muncey "wasn't professional" and "went to management about her several times." (p. 111-113, l. 23, 1-23, 1-22). Plaintiff admits that she would go above Muncey's head for "anything I have going on" rather than dealing with her. (p. 115, l. 8-15).

Muncey spoke with both Plaintiff and Holley and both expressed that they did not want to work with one another. (Doc. 63-1 Muncey Affidavit; Holley statement BS010). Based on the conflict with Holley, and upon consideration of routine evaluations conducted by EHS Education Coordinator, Susanne Napp ("Napp"), on

7

August 4, 2016, management made the determination to relocate Plaintiff to the EHS infant classroom. (BS085; Doc. 63-1 Muncey Affidavit).

The rate of pay is the same in each class and the sole purpose of the decision to relocate Plaintiff was to try to reduce tension and create a more cooperative work atmosphere for the benefit of the children. Plaintiff objected to the transfer, rolled her eyes and wrote a series of notes concerning the matter (BS060-062) (Doc. 63-1 Muncey Affidavit). Plaintiff told the day care she would resign if transferred. (p. 104, l. 12-16).

In her deposition, Plaintiff stated that Amanda Powell ("Powell"), another EHS education specialist who visited the center, was responsible for the attempt to move Plaintiff. (p. 108-109, l. 7-23, 1). Powell spoke with Muncey about how EHS 2 needed a change and suggested moving Plaintiff as a possible option to see if it made a difference. After several attempts to resolve Plaintiff's displeasure with the transfer, she was given a choice by Muncey to accept the transfer to Infant EHS or go to a regular day care class (which would mean lower pay). Plaintiff chose Infant EHS. On August 3, 2016, Plaintiff signed a document agreeing to move to the EHS infant room. (*See* Exhibit 1 attached to Doc. 63-1 Muncey Affidavit). Plaintiff's negative attitude appeared to increase as a result of this incident. (Doc. 63-1 Muncey Affidavit). Plaintiff was still mad about the day care "trying to take [her] out of the classroom", which created "a big ordeal." (pp. 100-101, l. 20-23, 1-4. As a result, Plaintiff indicated that "we didn't get no work done" (p. 110, l. 5-6).

Plaintiff worked in the EHS infant room from August 3, 2016 until mid-August, when a new EHS year started on August 15, 2016. While assigned to the infant room, Plaintiff would not acknowledge Muncey. (Doc. 63-1 Muncey Affidavit). Plaintiff complained while assigned to the infant room and did not want to perform her job. (Heather statement dated 11-28-16 BS098). Plaintiff started the new year in the infant room. When another teacher left the school, an opening was created in the older group. At that point, Muncey gave Plaintiff a chance to work in her preferred class. (Doc. 63-1 Muncey Affidavit).

On October 25, 2016, there was another incident regarding Plaintiff's younger child's behavior while riding on the van. Jennifer Roberts ("Roberts") advised Plaintiff that her younger son refused to follow safety rules during transport and requested Plaintiff to intervene. (p. 122-124, l. 19-23, 1-23, 1-11). Plaintiff accused Roberts of "picking" on her child and stated that her children would no longer ride the day care van. (p. 213, l. 2-12, p. 270, l. 16-20). This resulted in a confrontation between Plaintiff, who was upset, and day care director Pam Hill ("Hill"). (p. 123-124, l. 18-23, 1-11). Plaintiff told Hill that she was going to start picking up her children from after school and the van was not going to pick them up anymore. (p. 127, l. 1-10). Plaintiff gave Hill "the ultimatum" that she be excused daily to pick her children up which would require her to be absent for approximately thirty minutes (p. 128, l. 3-8).

Muncey advised Plaintiff that she could only leave if there was someone available to cover for her while she was away, and that Plaintiff could not be

9

guaranteed that another employee would be available to cover for her during that time because it was during the time the vans were operating and only minimal staff was left in the front office. (Doc. 63-1 Muncey Affidavit). Darla Hudson ("Hudson"), Assistant Center Director, advised Plaintiff that she would not be allowed to leave her class daily to pick up her children. Hill also advised Plaintiff that accommodations would not be made which were adverse to the center's operation and could not be guaranteed daily. The EHS program requirements mandate that at least two teachers be present in the room with the children at all times (BS0083). The policy is known to all employees and is posted in writing and a copy is in each classroom and the front office. (BS0073-75).

On October 26, 2016 Plaintiff left her classroom through a side door without permission or having someone available to cover for her. First, Plaintiff told Muncey that she was going to pick her kids and for Muncey to come watch her classroom. (p. 130, l. 9-23). Plaintiff went out the back door of the facility without clocking out. (p. 133, l. 16-22). Before Plaintiff left, Muncey told Plaintiff that there was no one to cover for her but Plaintiff left anyway. She returned after approximately 30 minutes. The incident was observed by the day care security cameras, but was recorded over by the system. By leaving, Plaintiff violated the mandated rules which were applicable to her classroom and the EHS Program. Plaintiff was suspended for 3 days. (Oct. 27-28 and 31) (BS 064).

On October, 31, 2016, Plaintiff filed an unverified, unsworn EEOC charge of discrimination, stating in part that she believed her discrimination was racially

10

motivated. (Ex. 2, p. 139 l. 13-19, p. 141 l. 3-14; BS001). Plaintiff also alleged that the $8.00 an hour paid during holiday pay to some other employees compared to her alleged rate of $7.25 an hour was racially discriminatory.

Following her suspension, Plaintiff returned to work during the week after November 7, 2016. Plaintiff's initial EEOC complaint was dismissed on November 17, 2016 and Plaintiff was given a right to sue notice. (BS005). Plaintiff did not file suit within 90 days of that dismissal.

Plaintiff continued to engage in uncooperative and insubordinate conduct after her return from suspension and up to the date of her termination (*See e.g.* Miranda Lyons' statement dated November 28, 2016, BS0095; Heather statement dated November 28, 2016 BS098; Jessica Holley statement November 29, 2016 BS0101). Examples of Plaintiff's behavior are refusing to acknowledge Muncey, her direct supervisor, when she came into the room and exhibited an unwillingness to engage in conversations about operational issues with the classroom or the day care. Muncey received a phone call from an EHS parent wanting to check on her child. Muncey walked down to Plaintiff's class and asked Plaintiff directly how the child was doing. Plaintiff looked up at Muncey and then continued on with her business as though Muncey had not spoken to her. Muncey then asked Plaintiff's co-teacher Miranda Lyons about the child. On other occasions during this time frame Muncey went to the class to check numbers, or to check on children, hand out paper work, or talk about Gold or Childplus. On each occasion, Plaintiff would not respond and Muncey would have to get answers from the other teacher in the room. (Doc. 63-1

11

Muncey Affidavit). Plaintiff acknowledges one incident like this. (pp. 149-150, l. 19-23, 1-23) Though her perspective of what happened differs, Plaintiff admits failed to acknowledge her supervisor. (*Id.*).

On another occasion, while distributing information to all employees, Muncey found Plaintiff and Porcher Rogers ("Rogers") in the hallway. Muncey held out the paper to give to Plaintiff and she did not take it. Rogers took the paper from Muncey and gave it to Plaintiff. (Doc. 63-1 Muncey Affidavit). Another co-worker, Miranda Lyons ("Lyons") stated that Plaintiff would give Lyons the "silent treatment" if Lyons did something to make her mad or did not agree with her and felt Plaintiff was a mental bully. (Lyons statement of 11-28-16 BS 095; pp. 185-186, l. 21-23, 1-2; *See also* Unemployment transcript p. 12).

On November 21, 2016, management held a meeting and determined that Plaintiff should be terminated for cause due to her behavior and that the termination was in the best interest of the business the children, and the efficient operation of the daycare. Muncey wrote a memorandum documenting the reasons for the termination. (BS088-89). On November 21, 2016 Plaintiff was terminated. (BS034, BS069). The same day, Plaintiff filed a claim for unemployment compensation benefits. After a hearing, the claim was denied. (BS 113).

On January 12, 2017, Plaintiff filed a second unsworn, unverified EEOC complaint. (Ex. 11). Plaintiff alleged that she "was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended." Plaintiff's second EEOC complaint was dismissed and Plaintiff received a Right to

Sue Letter on January 18, 2017. (BS039). Plaintiff filed suit in this Court on March 17, 2017. (Doc. 1).

**IV.    Analysis**

Plaintiff's Complaint (Doc. 1) presents one claim: retaliation. Therein, Plaintiff indicates that Defendant discharged her from its employment in retaliation for her filing an EEOC charge.[6]

Despite being given ample opportunity, Plaintiff has offered no response to Defendant's motion for summary judgment. Although Plaintiff fails to address the motion, the court has still considered this matter on the merits of the motion. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1101 (11th Cir. 2004)("[S]ummary judgment, even when unopposed, can only be entered when 'appropriate.' ").

Under Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U.S.C. § 2000e–3(a), it is unlawful "for an employer to discriminate against any of his employees...because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." The *McDonnell Douglas* burden-shifting analysis applies in cases of retaliation relying on circumstantial evidence, such as this one. *Bryant v.*

---

[6] Defendant argues that Plaintiff failed to exhaust her administrative remedies. For purposes of the motion for summary judgment, the undersigned assumes without finding that Plaintiff properly exhausted those remedies.

13

*Jones,* 575 F.3d 1281, 1307 (11th Cir.2009). To establish a *prima facie* case for retaliation, the employee must show:

> (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action. These three elements create a presumption that the adverse action was the product of an intent to retaliate. Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and drops from the case. After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions.

*Id.* at 1307–08 (internal citations and quotation marks omitted).

Assuming, without finding, that Plaintiff has established a *prima facie* case of retaliation, Defendant has proffered a legitimate, non-discriminatory reason for her termination. Namely, that Plaintiff was insubordinate, failed to follow Defendant's rules and policies, and was difficult to work with and/or manage. The burden of proving discrimination always remains with the plaintiff. *St Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, 427 (1993). Beacuse Plaintiff did not respond to Defendant's Motion for Summary Judgment, she has not shown that Defendant's articulated reasons are pretextual. For this reason, summary judgment is due to be **GRANTED** on Plaintiff's retaliation claim.

## V. CONCLUSION

In accordance with the foregoing analysis, it is **ORDERED** that Defendant's Motion for Summary Judgment under Rule 56 (Doc. 63) is **GRANTED** and that

Plaintiff's claim is **DISMISSED with prejudice**. Final judgment shall be entered by separate document under Federal Rule of Civil Procedure 58. [7]

**DONE** and **ORDERED** this **16th** day of **April 2018**.

                                            */s/ Katherine P. Nelson*
                                            **KATHERINE P. NELSON**
                                            **UNITED STATES MAGISTRATE JUDGE**

---

[7] Defendant's motion to take its motion for summary judgment under submission and motion to continue the pretrial conference (Docs. 70-71) are **MOOT**.